1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLARD RICHARD STROUD, JR.,<br><br>                                         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br>SERGEANT JESUS LIZARRAGA,<br>BENJAMIN SHEA, SERGEANT PAUL<br>MICHALKE, and DOES 1–25,<br><br>                                         Defendants. | Case No.:  18-CV-515 JLS (MDD)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS<br>PLAINTIFF'S THIRD AMENDED<br>COMPLAINT**<br><br>(ECF No. 64) |

        Presently before the Court is Defendants' Motion to Dismiss Third Amended Complaint ("Mot.," ECF No. 64), as well as Plaintiff's Opposition to ("Opp'n," ECF No. 67) and Defendants' Reply in Support of ("Reply," ECF No. 69) the Motion.  The Court vacated the hearing on the Motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 70.  After considering Plaintiff's Third Amended Complaint ("TAC," ECF No. 63), the Parties' arguments, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## BACKGROUND

        On the evening of March 12, 2016, Plaintiff was walking in the parking lot of the George Bailey Detention Center to visit someone.  TAC ¶ 15.  A group of eight to ten

Sheriff's Deputies, including the named Defendants and Doe Defendants, stopped Plaintiff and asked for identification, which Plaintiff provided. *Id.* Defendants told Plaintiff that his person and vehicle would be searched and that Plaintiff "did not have a choice in the matter." *Id. ¶¶* 15, 17. One of the Defendants asked Plaintiff if he was on probation or parole; Plaintiff responded that he was on neither. *Id.* ¶ 19. Plaintiff was also asked whether he had been arrested in the past, and Plaintiff "asked why that was important." *Id.* Plaintiff informed Defendants that he did not want to be searched or interrogated and that he would rather go home without making his visit. *Id.*

Defendants told Plaintiff he could not leave and was going to be searched. *Id.* ¶ 20. After a "brief dialog[ue]," Defendants grabbed Plaintiff's arms, slammed him against a vehicle, and twisted his arms behind his back. *Id.* ¶ 21. Plaintiff begged Defendants to stop. *Id.* One of the Deputies yelled to "take him down," and Plaintiff was "slammed to the ground." *Id.* Although Plaintiff did not resist, *id.* ¶ 22, Defendants jumped on Plaintiff's back and applied a choke hold to his throat using their knees. *Id.* ¶ 23. One of the Deputies used a carotid restraint on Plaintiff's neck. *Id.* ¶ 24. Defendants put Plaintiff in tight handcuffs, causing him to "scream[] out in pain and plead[] with the Deputies to stop." *Id.* ¶ 24.

Defendants asked Plaintiff if he needed medical treatment. *Id.* ¶ 28. Plaintiff responded that he did. *Id.* When the paramedics arrived, they "briefly attended to [Plaintiff's] injuries" and determined that he had no broken bones. *Id.* Defendants then "shoved" Plaintiff into the back of a patrol car to transport him to jail. *Id. ¶* 31. The Deputies told Plaintiff he was arrested for being drunk in public. *Id.* ¶ 35. Plaintiff repeatedly asked for a field sobriety test or toxicology test but was denied both. *Id.* ¶ 38.

Although Plaintiff had his cell phone in his right hand when he was first approached by Defendants, *id.* ¶ 18, he no longer had his phone in the patrol car. *Id.* ¶ 31. Plaintiff asked the two Deputies in the patrol car for his phone, and the Deputies said that they did not know where his phone was. *Id.* While Plaintiff was in the patrol car, Plaintiff's vehicle was searched. *Id.*

1  Plaintiff was released from custody the following day, on March 13, 2016, and
2  returned to the George Bailey Detention Facility to retrieve his vehicle. *Id.* ¶ 39. Plaintiff
3  asked an officer in the parking lot whether his phone had been turned into the lost and
4  found because the phone had not been logged as Plaintiff's property at the time of his arrest.
5  *Id.* The officer took Plaintiff's contact information, which Plaintiff believes the officer
6  provided to Sergeant Michalke. *Id.* ¶ 40. Sergeant Michalke called Plaintiff several days
7  later and suggested that Plaintiff file a claim with the Sheriff's Department for the missing
8  phone. *Id.* ¶¶ 41–42. After Plaintiff filed the claim, Sergeant Michalke informed Plaintiff
9  that a phone was retrieved from the ground on the night in question, but that it belonged to
10 one of his fellow officers. *Id.* ¶ 42. Sergeant Michalke could not remember to which
11 officer the phone belonged. *Id.*

12  Sergeant Michalke also told Plaintiff that he did not think Plaintiff was under the
13 influence at the time of the arrest but that he had agreed to "go along with" the charge
14 brought by the two arresting officers. *Id.* ¶ 37. Plaintiff ultimately was charged with
15 resisting arrest rather than public intoxication, *id.* ¶ 36, and was found not guilty at trial.
16 *Id.* ¶ 44.

17  On March 9, 2018, Plaintiff filed this action, in pro se, pursuant to 42 U.S.C. § 1983
18 against Sheriff William D. Gore, Detective Lizarraga, Sergeant Michalke, Detective Shea,
19 and the City of San Diego Paramedics Services. *See* ECF No. 1. Plaintiff was granted
20 leave to proceed *in forma pauperis*, *see* ECF No. 4, and the United States Marshals Service
21 served Sheriff Gore and Sergeant Michalke on April 27, 2018. *See* ECF Nos. 6, 10. The
22 Sheriff's Office refused to accept service on behalf of Detectives Lizarraga and Shea and
23 the City of San Diego Paramedics Services. *See* ECF Nos. 7–9.

24  Defendants filed a motion to dismiss Plaintiff's original complaint on May 18, 2018.
25 *See* ECF No. 11. The Court granted Plaintiff leave to file a First Amended Complaint, *see*
26 ECF No. 14, in which Plaintiff added as defendants Detective M. Snelling, Deputy K.
27 Racine, and Paramedic E. Lancaster. *See generally* ECF No. 15. Consequently, the Court
28 denied as moot the pending motion to dismiss, *see* ECF No. 16, following which

Defendants Sheriff Gore and Sergeant Michalke filed a motion to dismiss Plaintiff's First Amended Complaint on June 4, 2018.  *See* ECF No. 17.  The Court granted their motion, dismissing Plaintiff's First Amended Complaint without prejudice.  *See generally* ECF No. 30.

On December 26, 2018, Plaintiff filed a Second Amended Complaint, which dropped as Defendants Paramedic E. Lancaster, Sheriff Gore, Deputy Racine, and Detective Snelling but added unnamed Doe Defendants 1–25.  *See generally* ECF No. 32. On January 9, 2019, Sergeant Michalke filed a Motion to Dismiss the Second Amended Complaint, *see generally* ECF No. 32, which was joined by the County on February 1, 2019, *see generally* ECF No. 35, and Defendants Lizarraga and Shea on April 9, 2019, *see generally* ECF No. 44.  On April 12, 2019, Defendants Racine and Snelling filed a Second Motion to Dismiss.  *See generally* ECF No. 46.  The Court granted in part and denied in part the Motions, dismissing without prejudice Plaintiff's state law causes of action and all causes of action against Defendants Racine and Snelling.  *See* ECF No. 62.

On September 16, 2019, Plaintiff filed the operative Third Amended Complaint, again adding as Defendants Deputy Racine and Detective Snelling.  *See generally* ECF No. 64.  On September 27, 2019, Defendants filed the instant Motion.  *See* ECF No. 64.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).   A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).   That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.   *Id.* (quoting *Twombly*, 550 U.S. at 557).   Further, the Court need not accept as true "legal conclusions" contained in the complaint.   *Id.*   This review requires context-specific analysis involving the Court's "judicial experience and common sense."   *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   *Id.*

In ruling on a 12(b)(6) motion, "[t]he court must accept all factual allegations pleaded in the complaint as true, and must construe them all and draw all reasonable inferences from the in favor of the nonmoving party."   *Maier v. J.C. Penney Corp., Inc.*, No. 13cv0163-IEG (DHB), 2013 WL 3006415, at *1 (S.D. Cal. June 13, 2013).   When a complaint is filed pro se, it must be "liberally construed."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."   *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

/ / /

/ / /

# ANALYSIS

Plaintiff alleges five causes of action: (1) unreasonable seizure of person and excessive force, (2) First Amendment retaliation, (3) deliberate or reckless suppression of evidence in violation of Fourteenth Amendment due process, (4) unreasonable seizure, and (5) unreasonable search. *See generally* FAC ¶¶ 61–147. Plaintiff alleges all causes of action against all Defendants. *See id.* Pursuant to Rule 12(b)(6), Defendants move to dismiss all causes of action against the County of San Diego, Detective Snelling, and Deputy Racine, as well as the third, fourth, and fifth causes of action against all Defendants. *See generally* Mot. at 4–13.

## I.   Municipal Liability Against the County of San Diego

Defendants assert that all causes of action against the County of San Diego are barred as a matter of law because the Third Amended Complaint fails to allege specific facts supporting municipal liability. *See* Mot. at 4–6. Local governments may only be held liable under 42 U.S.C. § 1983 where the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Municipalities, therefore, are only liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. Municipalities are not liable under section 1983 for injuries inflicted solely by employees or agents. *Id.*

To state a viable section 1983 claim against a municipal defendant, Plaintiff must show (1) he was deprived of a constitutional right, (2) the municipality had a policy or custom, (3) this policy or custom amounted to deliberate indifference to his constitutional right, and (4) the policy or custom was the moving force behind the violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). For the purposes of a section 1983 claim, "[a] 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Medrano v. Kern Cty. Sheriff's Officer*, 921 F.

6

Supp. 2d 1009, 1014 (E.D. Cal. 2013) (quoting *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2009)).  A "custom" is "a 'widespread practice that although not authorized by written law or express municipal liability, is so permanent and well-settled as to constitute a custom or usage with the force of law.'" *Id.* at 1014–15 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Liability for a custom must be based on practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997).

### A.   Policy or Custom

Under each cause of action, Plaintiff alleges generally that the County of San Diego is subject to liability "by its policy/ies, custom(s), practice(s), act(s) of final policy maker(s), ratification and/or failure to train." TAC ¶¶ 77, 91, 113, 131, 146.  Plaintiff also alleges that Defendants acted based on "one or more of [the County's] policy/ies, practice(s) or custom(s)." *Id.* ¶ 59.  These assertions are conclusory and do not meet the requisite pleading standard. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying the *Twombly/Iqbal* pleading standard to civil-rights cases so that plaintiffs must plead "sufficient allegations of underlying facts to give fair notice and enable the opposing party to defend itself effectively" and "factual allegations that . . . plausibly suggest an entitlement to relief") (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  Plaintiff does not identify a particular policy or practice, describe a series of transactions, or allege a pattern of misconduct to suggest that an official policy "was the moving force behind the alleged misconduct." *See Bini v. City of Vancouver*, 218 F. Supp. 3d 1196, 1202 (W.D. Wash. 2016).  Plaintiff therefore has failed to plead a section 1983 claim against the County of San Diego. *See, e.g.*, *id.* (dismissing section 1983 claim against defendant city where the plaintiff "merely recite[d]" the existence of policies or practices likely to cause the violation of constitutional rights).

/ / /

/ / /

### B.    Failure to Train

Plaintiff states that the conduct alleged in the Third Amended Complaint was carried out without proper training.  TAC ¶ 46.  A county's inadequate training may constitute a "policy" triggering municipal liability where the failure to train amounts to deliberate indifference of the plaintiff's constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).  A plaintiff seeking to proceed on a failure to train theory must allege that (1) the existing training program is inadequate in relation to the duties of the particular officers, (2) "the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact," and (3) the inadequacy of the training program actually caused the violation of the plaintiff's constitutional right.  *Bini*, 218 F. Supp. 3d at 1202.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To demonstrate deliberate indifference, a plaintiff ordinarily must show a pattern of similar constitutional violations caused by inadequately trained employees.  *Id.* at 62.

Plaintiff fails to identify specific shortcomings in the County's training policy and, therefore, has not established the first prong of his claim.  *See McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 806 (2016) ("Alleging that training is 'deficient' or 'inadequate' without identifying a specific inadequacy is conclusory and does not support a plausible claim."); *see also Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (dismissing inadequate training claim where the plaintiffs did not allege facts regarding the training policies or explain why the training was inadequate); *Bini*, 218 F. Supp. 3d at 1203 (dismissing inadequate training claim where the plaintiff did not allege "specific shortcomings" in the training program).  Because Plaintiff has not identified what the County's training practices were and how these practices were deficient, the Court cannot determine whether Plaintiff has stated a plausible claim for deliberately indifferent conduct.  *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009).  Having found that Plaintiff failed to establish municipal liability under section 1983, the Court **GRANTS** Defendants' Motion as to all causes of action against the County of San

Diego.  Although Plaintiff has filed three amended complaints, *see* ECF. Nos. 15, 32, 63, his causes of action against the County of San Diego have not previously been dismissed. *See* ECF Nos. 30, 62.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** all causes of action against the County of San Diego.

**II.   Defendants Snelling and Racine**

Defendants argue that Plaintiff is barred from pleading claims against Defendants Snelling and Racine because Plaintiff previously voluntarily dismissed them and the statute of limitations has since run.  *See* Mot. at 6–8.

Statutes of limitations are affirmative defenses, so the defendant bears the burden of proof as to each element of a statute of limitations defense.  *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017).  Although a plaintiff ordinarily need not plead around affirmative defenses, "a 'claim may be dismissed as untimely pursuant to a 12(b)(6) motion when the running of the statute of limitations is apparent on the face of the complaint.'"  *Id.* at 913–14 (quoting *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus.*, 720 F.3d 1174, 1178 (9th Cir. 2013)).

In section 1983 claims, federal courts apply the forum state's statute of limitations for personal injury, as well as the forum state's law regarding tolling.  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  California's applicable statute of limitations is two years.  *Id.* (citing Cal. Civ. P. Code § 335.1).  A section 1983 action accrues "when the plaintiff knows . . . of the injury which is the basis of the action," *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999), so the statute of limitations in this case began running on March 12, 2016—the night the events alleged in the Third Amended Complaint took place.  TAC ¶ 15.

Plaintiff filed his initial Complaint on March 9, 2018, *see* ECF No. 1, three days before the statute of limitations was set to run.  Plaintiff added Defendants Snelling and Racine in the First Amended Complaint, filed on May 24, 2018.  *See* ECF No. 15.  Plaintiff then failed to include Defendants Snelling and Racine in his Second Amended Complaint, filed on December 26, 2018, *see generally* ECF No. 32, but filed a notice of errata on

May 5, 2019, explaining that this omission was inadvertent and requesting that the Court add Defendants Snelling and Racine to the Second Amended Complaint. *See* ECF No. 52 ¶¶ 2–5. The Court found that Plaintiff voluntarily dismissed Detective Snelling and Deputy Racine as Defendants when he failed to include them in the Second Amended Complaint. *See* ECF No. 62 at 15–16. Accordingly, the Court dismissed without prejudice all claims against them. *Id.* at 16.

Under California law, "the statute of limitations in civil actions stops running the moment the complaint is filed." *Straley v. Gamble*, 217 Cal. App. 4th 533, 538 (2013). A plaintiff, however, may not "freeze an used part of the statute of limitations to be thawed out when needed." *Thomas v. Gilliland*, 95 Cal. App. 4th 427, 431 (2002). In *Thomas*, for example, the plaintiff filed a medical malpractice action three months after his injury accrued, then voluntarily dismissed the action 22 months later. *Id.* at 430. When the plaintiff later attempted to file another action based on the same events, the court found the action untimely, reasoning that the remaining portion of the limitations period was not available to the plaintiff after he voluntarily dismissed the first action. *Id.* 432. The court noted that the statute of limitations was tolled "*during the pendency of the action*" but, after the plaintiff voluntarily dismissed the first action, it was as if that action had never been filed. *Id.* (emphasis in original).

Similarly, in *Wood v. Elling Corporation*, 20 Cal. 3d 353 (1977), the plaintiff timely filed an action, which was later dismissed against two of the defendants. The plaintiff subsequently tried to file another action against these defendants. *Id.* at 357. The California Supreme Court held that the statute of limitations prevented the plaintiff from filing this action, rejecting the plaintiff's argument that the limitations period was tolled from the time of filing the first action to the time of dismissal. *Id.* at 359. The California Supreme Court noted that, after a dismissal, "the applicability of the pertinent statute of limitations is restored *as if no other action had been brought*." *Id.* (emphasis added). Here, as in *Thomas* and *Wood*, once Defendants Snelling and Racine were voluntarily dismissed

/ / /

from this action, their statute of limitations was restored as if they had never been defendants in this case.

Additionally, the doctrine of equitable tolling does not apply here. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Here, Plaintiff was not delayed in bringing his claim because of an inability to obtain vital information, as evidenced by Plaintiff's naming of Defendants Snelling and Racine in his First Amended Complaint. *See* ECF No. 15. Further, although the pleadings of pro se litigants are held to "less stringent standards," *see Erickson*, 551 U.S. at 94, Plaintiff's pro se status alone does not justify equitable tolling. *See Lau v. Fernandez*, No. 17-00083, 2017 WL 3499943, at *1 (D. Guam July 25, 2017) (holding that pro se plaintiff's "lack of legal sophistication" did not justify equitable tolling because "the equitable tolling doctrine is to be applied 'sparingly' and is reserved only for 'extreme cases'") (internal citations omitted). The two-year statute of limitation period, therefore, ended on March 12, 2018. Because these dates are clear on the face of the Third Amended Complaint, the Court may dismiss as untimely Plaintiff's claims against Defendants Snelling and Racine. *See Ayala*, 263 F. Supp. 3d at 913.

Plaintiff argues that his claims against Defendants Snelling and Racine are not barred because they relate back to his original Complaint. *See* Opp'n ¶ 4. In support of his argument, Plaintiff relies on Federal Rule of Civil Procedure 15(c)(1)(B), contending that his claims against Snelling and Racine "ar[i]se out of the conduct, transaction, or occurrence set out . . . in the original pleading." *Id.* Under Rule 15(c)(1)(C), however, a plaintiff may change a party only where the party to be brought in "knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). Here, there was no such mistake of identity, as Plaintiff included Defendants Racine and Snelling in his First Amended Complaint. *See generally* ECF No. 15. Accordingly, the Court **GRANTS** Defendants' Motion as to all causes of action against Defendants Snelling and Racine.

Defendants Snelling and Racine request that Plaintiff's causes of action against them be dismissed with prejudice.  *See* Mot. at 7.  Although courts generally take a liberal approach to amendment, particularly in cases prosecuted by *pro se* litigants, leave to amend is properly denied where amendment would be futile.  *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").  The Court finds that Plaintiff cannot possibly cure his claims against Defendants Snelling and Racine as the statute of limitations has run.  *See, e.g.*, *Platt Elec. Supply, Inc.  v.  EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir.  2008) (affirming dismissal without leave to amend proper where the claims were barred by the statute of limitations so amendment would be futile); *Critchlow v. Critchlow*, No. C 12-01198 LB, 2013 WL 670448, at *11 (N.D. Cal. Feb. 25, 2013) (dismissing complaint with prejudice where all claims were barred by the statute of limitations). Accordingly, the Court **DISMISSES WITH PREJUDICE** all causes of action against Defendants Snelling and Racine.

## III.   Third Cause of Action for Suppression of Evidence

Plaintiff brings his third cause of action for violation of the Fourteenth Amendment's Due Process clause.  *See* TAC ¶¶ 91–114.  Plaintiff alleges that he was arrested without probable cause and taken to jail for public intoxication without first being tested or evaluated for sobriety.  *Id.* ¶¶ 95–99.  Defendants' failure to perform a sobriety test or collect evidence, Plaintiff reasons, was a violation of Plaintiff's liberty and due process. *Id.* ¶ 99.  Plaintiff further asserts that he was unable to obtain evidence while he was held in jail.  *Id.*  ¶ 102.  Plaintiff contends that Defendants' decision not to undertake any investigation to support Plaintiff's "charge, arrest, [and] incarceration" constitutes a deliberate or reckless suppression of evidence.  *Id.* ¶ 101.

The Supreme Court has held that suppression of evidence favorable to a criminal defendant amounts to a violation of the Due Process clause of the Fourteenth Amendment. *Brady v. Maryland*, 373 U.S. 83, 85–86 (1963); *Weary v. Cain*, 136 S.Ct. 1002, 1006

(2016).  To establish a violation under *Brady*, a plaintiff must show that (1) the evidence was favorable to the accused, (2) the evidence was suppressed by the State, and (3) the plaintiff was prejudiced by the non-disclosure.  *Strickler v. Green*, 527 U.S. 263, 281–82 (1999).  The Ninth Circuit has further held that failure to collect potentially exculpatory evidence violates due process when such failure is the result of bad faith.  *See Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989).  Whether an officer acted in bad faith "'turn[s] on the police's knowledge of the exculpatory value of the evidence.'" *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 337 (1988)), *cert. denied* 541 U.S. 1010 (2004) (alteration in original).

Here, Plaintiff alleges some facts to suggest that Defendants acted in bad faith by failing to collect evidence that would have proved Plaintiff's sobriety.  For example, Plaintiff alleges that Michalke told Plaintiff he did not think Plaintiff was under the influence of drugs or alcohol but agreed to charge him to go along with the arresting officers.  TAC ¶ 41.  Plaintiff refers to this transaction as "[a] classic code of silence situation by law enforcement officials."  *Id.*

Plaintiff, however, admits that he was never charged with public intoxication.  *Id.* ¶ 107.  Absent an underlying criminal conviction, Plaintiff cannot demonstrate the requisite prejudice to establish a *Brady* violation.  *See Kastis v. Alvarado*, No. 1:18-cv-01325-DAD-BAM, 2020 WL 2468389, at *5–6 (E.D. Cal. May 13, 2020) (dismissing with prejudice plaintiff's section 1983 claim because plaintiff could not state a *Brady* violation without an underlying conviction).  Plaintiff's third cause of action, therefore, amounts to his having been arrested without first being tested for sobriety.  As Defendants note, *see* Mot. at 10, the Supreme Court has held that arrest without probable cause does not violate an arrestee's substantive due process rights to support a section 1983 claim.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994).  Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's third cause of action.  Because Plaintiff cannot possibly cure the deficiencies of this claim by alleging additional facts, amendment would be futile.  *See, e.g.*, *Kastis*, 2020

WL 2468389, at *6.  The Court therefore **DISMISSES WITH PREJUDICE** Plaintiff's third cause of action for suppression of evidence.

**IV.    Fourth Cause of Action for Unreasonable Seizure**

Defendants move to dismiss Plaintiff's fourth cause of action for unreasonable seizure on the ground that it is duplicative of Plaintiff's first cause of action for excessive force.  *See* Mot. at 10–11.  Plaintiff contends that he can bring separate causes of action for excessive force against his person and unreasonable seizure of his phone because each alleged incident took place at a separate point in time.  *See* Opp'n ¶ 4.

In the Third Amended Complaint, Plaintiff titles his fourth cause of action "Unreasonable Seizure (Person and Belongings/Phone)," TAC ¶¶ 115–132, and asserts that he was "not permitted to leave."  *Id.* ¶¶ 121–22.  This title and allegation suggest that Plaintiff intended to bring this cause of action for unreasonable seizure of both his person and his phone.  In his Opposition, however, Plaintiff states "the excessive force used on his person during the attack is an independent cause of action from the fact this his phone was unreasonably seized," Opp'n ¶ 4, suggesting that the fourth cause of action exclusively pertains to the unreasonable seizure of Plaintiff's phone.  Given that Plaintiff already alleges a cause of action for unreasonable seizure of his person and excessive force, *see* TAC ¶¶ 61–78, which Defendants have not moved to dismiss, *see generally* Mot., the Court **DISMISSES** as duplicative Plaintiff's claim for unreasonable seizure of his person from his fourth cause of action.

As for the alleged seizure of Plaintiff's phone, Defendants argue that Plaintiff has failed to allege sufficient facts to support his claim.  *See* Mot. at 11.  The Court disagrees.  Tangible property is 'seized' within the meaning of the Fourth Amendment "when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The Fourth Amendment does not protect against all seizures, but only those that are unreasonable.  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  Here, Defendants do not contend that any seizure of Plaintiff's phone

/ / /

1  was reasonable; rather, they assert that Plaintiff fails to show that any of the Deputies seized
2  his phone.  Mot. at 11.

3         The Third Amended Complaint alleges that Plaintiff had his phone in his right hand
4  at the time he was confronted by the Deputies.  TAC ¶ 18.  Shortly after, Defendants
5  grabbed Plaintiff's arms and twisted them behind his back "in a very violent manner," *id.*
6  ¶¶ 20–21, then forced their knees into Plaintiff's back as they twisted Plaintiff's arms
7  behind his back to apply handcuffs.  *Id.* ¶ 24.  The Third Amended Complaint next
8  mentions the cell phone when Plaintiff "asked for his phone to be returned to him" while
9  he was in the back of the patrol car.  *Id.* ¶ 31.  The phone was not logged with Plaintiff's
10 property when he was taken to jail nor was it returned to him upon his release.  *Id.* ¶ 39.
11 At Defendant Michalke's suggestion, Plaintiff filed a claim for the missing phone with the
12 Sheriff's Department.  *Id.* ¶ 42.  Michalke then told Plaintiff that "the phone that was
13 retrieved from the ground on the night in question belonged to one of his fellow officers,"
14 but Michalke could not remember which Officer.  *Id.*

15        Although there is a factual gap concerning the whereabouts of the cell phone, one
16 can infer that Plaintiff lost possession of the phone at some time during the physical
17 confrontation, especially given the emphasis on Defendants' use of force on Plaintiff's
18 arms and wrists.  The allegations that Defendant Michalke told Plaintiff a phone belonging
19 to an officer was found on the ground on the same night "yet . . . ha[d] no recollection as
20 to which [o]fficer he gave the phone to," TAC ¶ 42, and that Plaintiff's "phone was seized,
21 never accounted for and never returned," *id.* ¶ 126, indicate Plaintiff's belief that the
22 officers took his phone.  Accepting these facts as true and drawing all reasonable inferences
23 in Plaintiff's favor, as the Court must at this stage, *see Maier*, 2013 WL 3006415, at *1,
24 the Court concludes that Plaintiff has stated a plausible claim for the unreasonable seizure
25 of his phone.  Accordingly, the Court **DENIES** Defendant's Motion as to the fourth cause
26 of action against all Defendants.

27 / / /

28 / / /

## V.    Fifth Cause of Action for Unreasonable Search

Defendants argue that Plaintiff's fifth cause of action for unreasonable search fails because their search was administrative, the correctional facility constitutes a "sensitive facility," and Defendants had a reasonable basis for individualized suspicion of Plaintiff. *See* Mot. at 11–13.

Administrative searches are "[a]mong the 'carefully defined classes of cases' for which no warrant is needed." *See Karfeld v. United States*, 944 F.2d 583, 586 (9th Cir. 1991).   The administrative search exception authorizes limited warrantless searches of persons seeking entry to sensitive facilities where the search is "part of a general regulatory scheme in furtherance of an administrative purpose, rather than . . . to secure evidence of crime." *Id.* (quoting *United States v. Davis*, 482 F.2d 893, 908 (9th Cir. 1973)). Nonetheless, an administrative search must be reasonable under the Fourth Amendment. *Id.*

Reasonableness is determined by balancing the intrusion of the search on the individual's Fourth Amendment interests against the promotion of legitimate government interests. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989).   The search must be "clearly necessary to secure a vital governmental interest, such as protecting sensitive facilities from a real danger of violence," and "no more intrusive than necessary to protect against the danger to be avoided." *McMorris*, 567 F.2d at 899.   As Defendants note, *see* Mot. at 12, "prison visitor vehicle searches . . . [have] been deemed reasonable under the special needs doctrine," although "some degree of individualized suspicion" is necessary to search a visitor without consent and without allowing the option to leave the prison rather than be searched.   *O'Con v. Katavich*, No. 1:13-cv-1321-AWI-SKO, 2013 WL 6185212, at *5 & n.3 (E.D. Cal. Nov. 26, 2013).   Courts must be careful not to extend unduly the administrative search exception. *McMorris v. Alioto*, 567 F.2d 897, 899 (9th Cir. 1978).

Assuming that the administrative search exception applies, the Court concludes that Plaintiff adequately alleges an unreasonable search of his person, belongings, and vehicle.

Plaintiff alleges that he was confronted by Defendants in the parking lot of the George Bailey Detention Facility. Compl. ¶ 15. Upon request, Plaintiff presented Defendants with his driver's license. *Id.* Plaintiff was then told that he and his vehicle would be searched before he could make his visit at the facility. *Id.* Defendants asked Plaintiff if he was on probation or parole, and Plaintiff answered that he was not on either. *Id.* ¶ 19. Defendants also asked Plaintiff about a past arrest and Plaintiff "asked why that was important." *Id.* Plaintiff told Defendants "that he did not wish to continue to interrogation" and would rather go home than submit to being searched." *Id.* In response, Defendants told Plaintiff he could not leave and would be searched with or without his consent. *Id.* ¶ 20.

Drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has alleged that Defendants did not have a reasonable basis for individualized suspicion of Plaintiff to justify searching Plaintiff without his consent and without allowing him the option to leave the facility. Reasonable suspicion must be based on "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (citing *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996) (quoting *United States v. Garcia-Camacho*, 53 F.3d 244, 246 (9th Cir. 1995))). Defendants argue that their suspicion of Plaintiff was reasonable because Plaintiff "was in a jail parking lot and refusing to comply with the requests of deputies," "initially refused to be searched," and "refused to answer whether he had been arrested in the past." Mot. at 12–13. Defendants cite no authority to support their contention that an individual's presence in a correctional facility's parking lot and refusal to answer questions is sufficient to create a reasonable basis of individualized suspicion.

Moreover, the Third Amended Complaint asserts that Defendants told Plaintiff that he and his vehicle would be searched before Plaintiff exhibited any resistance. TAC ¶ 15. Further, Plaintiff told Defendants he would rather go home without visiting the facility than "be subjugated to forfeit his right(s) not to be searched." *Id.* ¶ 19. It would be illogical to find Plaintiff's initial resistance to being searched sufficient to establish reasonable

suspicion to search Plaintiff.  Holding that officers have reasonable suspicion merely because the plaintiff "refus[es] to comply with the requests of deputies," Mot. at 12–13, by electing not to submit to a search would defeat the purpose of having a reasonable suspicion requirement; plaintiffs would be forced either voluntarily to submit to searches or to be found suspicious for refusing to do so and, consequently, to be forced to submit to such searches.  *See, e.g.*, *O'Con*, 2013 WL 6185212, at \*5 (recognizing that there must exist "some degree of individualized suspicion" before a prison official may deprive a visitor of "the option to leave the prison rather than be subjected to a[n administrative] search").

As for the search of Plaintiff's vehicle, although it is true that other Circuit Courts of Appeal have recognized that "prison visitor vehicle searches . . . [have] been deemed reasonable under the special needs doctrine," *see id.* at \*5 & n.3, these cases tend to involve situations in which inmates have access to vehicles in the parking lot.  *See, e.g.*, *United States v. Prevo*, 435 F.3d 1343, 1347 (11th Cir. 2006) ("At least where inmates have access to cars parked in prison facility parking lots, a search of the vehicle is reasonable."); *Neumeyer v. Beard*, 421 F.3d 210, 211 (3d Cir. 2005) ("Notably, some inmates have outside work details and such inmates 'may have access to visitors' vehicles parked at the prison.'"); *McDonell v. Hunter*, 809 F.2d 1302, 1309 (8th Cir. 1987) ("[I]t is not unreasonable to search vehicles that are parked within the institution's confines where they are accessible to inmates.").  There are no allegations in Plaintiff's Third Amended Complaint suggesting that inmates had access to his vehicle in the brief time between when he parked his vehicle and was confronted by Defendants; in the absence of Ninth Circuit authority to the contrary, the Court concludes that Plaintiff adequately alleges that the search of his vehicle was unreasonable.

For the above reasons, the Court does not find that Defendants had a reasonable basis for suspecting that Plaintiff was engaged in criminal activity and, therefore, **DENIES** Defendants' Motion as to Plaintiff's fifth cause of action for unreasonable search of his person, belongings, and vehicle.

/ / /

**CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion (ECF No. 64).  Specifically, the Court **DISMISSES WITHOUT PREJUDICE** all causes of action against the County of San Diego and **DISMISSES WITH PREJUDICE** Plaintiff's third cause of action and all causes of action against Defendants Snelling and Racine; Defendants' Motion is otherwise **DENIED**.  Plaintiff **MAY FILE** an amended complaint within <u>thirty (30) days</u> of the electronic docketing of this Order.  *Should Plaintiff elect not to file an amended complaint, this action will proceed on his surviving causes of action.*  Should Plaintiff choose to file a Fourth Amended Complaint, it must cure the deficiencies noted herein and must be complete in itself without reference to his prior complaints.  *See* S.D. Cal. CivLR 15.1.  *Any defendants or claims not re-alleged in the amended complaint will be considered waived.  See Lacey*, 693 F.3d at 925, 928.

**IT IS SO ORDERED.**

Dated:  August 5, 2020

Hon. Janis L. Sammartino
United States District Judge

18-CV-515 JLS (MDD)